GEORGE HOWLAND & others, Executors, *vs.* EDWARD W. HOW-
LAND & others.

A testator bequeathed $5000 in trust for each of his grandchildren who should be living at
the time of his decease, or be born afterwards, to be applied for the benefit of said grand-
child until majority, "it being my wish that if any grandchild of mine, on attaining the
age of twenty one years, shall have become dissipated, immoral, or in any way disquali-
fied to hold and prudently manage property in the opinion of" the trustees, this sum
should be withheld "until a reformation in such grandchild, or forever, in their discre-
tion." The testator left five sons and two daughters, and bequeathed the residue of his
property, one seventh to each of four of his sons and their children in right of representa-
tion, and three sevenths "in special trust," at such times as the trustees should judge
expedient to "pay the income or convey the principal" of one seventh to his other son
"or his children or descendants," and one seventh to each of his daughters, "or her chil-
dren or descendants." *Held*, that the gift of $5000 to afterborn grandchildren must yield
to the testator's general intent that his own children should enjoy the residue in their
lifetime; that the time for the formation of the residue must therefore be limited, and
that the time of filing a bill by the executors for the instructions of the court, five years
after his death, and after all claims against the estate were barred, was the proper time for
its formation and for excluding all grandchildren subsequently born. *Held, also*, that upon
the death, after the testator, of one of his daughters, leaving children, the power of elec-
tion of the trustees to pay over to her or her children ceased, and their duty became abso-
lute to pay over to her children as a class, subject to the power to withhold the share of
any one who should become disqualified as aforesaid; and that upon the death of one of
her children in infancy its father was entitled to receive the legacy of $5000, and its part
of its mother's share in the trust estate, as its administrator and next of kin.

BILL IN EQUITY, filed in Bristol in March 1857 by the execu-
tors of the will of George Howland, to obtain the directions of
the court as to the disposal of his estate. The case, as appear-
ing from the bill, answers and master's report, upon which it was
heard, was as follows:

George Howland died on the 22d of May 1852, and by his
will, made on the 11th of May, and admitted to probate on the
1st of June 1852, (besides certain devises and bequests for the
benefit of his wife, and for the establishment of a school, which
are not material to be stated,) and appointing his five sons to be
executors of his will, and his sons George and Matthew, and
Edward W. Howland, trustees for the benefit of his two daugh-
ters and his son Charles, and empowering his trustees to unite
in conveyances and all other acts necessary to effect a division
of his property, or any part thereof, provided as follows:

" Third. I give to each of my sons, George, Augustus, Mat thew and Robert, respectively, the sum of five thousand dollars for each and every child of my said sons, respectively, who shaL be living at the time of my decease, or who may be born to them respectively after my decease, with the request that each of my said sons will apply the sums so received by him for the benefit of such of his children as shall attain the age of twenty one years; said children to be benefited by said funds as nearly equally as practicable; the time and manner of distribution or payment to be left in each case to the discretion of my said sons, respectively; it being my wish that if any grandchild of mine, on attaining the age of twenty one years, shall have become dissipated, immoral, or in any way disqualified to hold and pru- dently manage property, in the opinion of the father, that my sons, respectively, would withhold the said sum of five thousand dollars intended for such grandchild, either until a reformation in such grandchild, or forever, in their discretion. I also give to my said trustees, George Howland, Jr., Matthew Howland and Edward W. Howland, the sum of five thousand dollars for each child of my son Charles W. Howland, and my daughters Eliza- beth H. Chase, and Susan H. Parsons, who shall be living at the time of my decease, or who shall be born to my said son or daughters after my decease; in special trust that said George, Matthew and Edward shall invest the same with their best skill and judgment, and as each of said children of my said son Charles, or my said daughters Elizabeth and Susan, shall attain the age of twenty one years, shall pay to them, respectively, the sum of five thousand dollars, and the net interest or income accrued thereon; provided always, that in case any child of said Charles, Elizabeth or Susan, on attaining the age of twenty one years, shall have become dissipated, immoral, or otherwise dis- qualified to hold or prudently manage property, in the opinion of the trustees aforesaid, or a majority of them, in such case I authorize my said trustees to withhold the sum intended for such grandchild, either temporarily or forever, and to divide the same among the other children of the same parents, if any, or add it to the residuary fund of my estate at their discretion, or to hold

the same and apply the interest or income thereof, or so much thereof as they think expedient, for the benefit of such grandchild from whom it is so withheld, or, which I should prefer, pay the same to the said Charles, Elizabeth or Susan, the parent of such child ; it being my desire, as far as it lies in my power, to impress upon my descendants the importance of virtuous and upright conduct."

Fifth. All the residue of the property of which he should die possessed, " including the sums which may be added to this residuary fund under the third clause of this will," he gave, devised and bequeathed as follows : One seventh part thereof to each of his sons George, Augustus, Matthew and Robert, " or their children in right of representation, in case of their decease before me," and three seventh parts to his sons George and Matthew, and Edward W. Howland, " and the survivors and survivor of them, and their successors in office forever, in special trust that they shall conduct and manage the same with their best skill and judgment, I hereby giving them full power to sell and convey all or any part thereof, and to invest and reinvest the proceeds thereof in such manner as they may think most judicious ; and that they shall, at such times as they may judge it expedient, pay the income or convey the principal of one third part of said trust property to my son Charles W. Howland, or his children or other descendants ; and, at such times as they may judge it expedient, shall pay the income or convey the principal of one third part of said trust property to each of my daughters, Elizabeth H. Chase and Susan H. Parsons, or their children or other descendants ; it being my will that said trust property shall be so managed and disposed of as to do the greatest good and for the longest time to my said son Charles, and my said daughters Elizabeth and Susan, and their descendants, respectively ; all conveyances to the children of said Charles, Elizabeth or Susan, during their lifetime, to be made with the assent and approbation of said Charles, Elizabeth or Susan, respectively ; and it also being my wish that the children of said Charles, Elizabeth and Susan, respectively, should be as equally benefited as may be by said property, except in such case as is

named in the proviso to the third clause of this will. I intend to and do hereby authorize said trustees to use their own sound discretion in carrying into effect my intentions in regard to said trust property for the benefit of said Charles, Elizabeth and Susan, and their descendants, and I authorize said trustees to conform their conduct to circumstances which may hereafter arise, and to do what they believe would be my will under the change of circumstances, keeping the general object in view."

The testator's property, as appearing by the inventory returned into the probate court, amounted, after paying all debts and legacies, to more than $400,000. His seven children, the eldest of whom was born in 1806 and the youngest in 1826, and many grandchildren, survived him; and several grandchildren were born after his death, the two youngest of whom were born in 1856. Susan H. Parsons, one of the testator's daughters, and wife of Samuel B. Parsons, died on the 9th of August 1854, leaving four children, all born in the testator's lifetime, one of whom, John B. Parsons, born in 1850, died on the 14th of October 1854, and his father was duly appointed his administrator.

*S. Bartlett,* for Samuel B. Parsons. 1. The provision for legacies to afterborn children, being incapable of execution in terms without defeating all enjoyment by the testator's children of any part of his estate pursuant to the will, must be declared void. No period of distribution having been fixed by the will, all afterborn children must share equally ; for their rights cannot vest or be devested according to the diligence or success of the executor in closing the settlement of the estate. See *Scott* v. *Scarborough,* 1 Beav. 154.

2. The seventh part of the residue, given in trust for Mrs. Parsons or her children or other descendants, upon her death vested equally in her children. In the direction "to pay the interest or convey the principal," "or" must be construed to mean "and," unless it can be deemed to refer to a distribution of income at one time and of principal at another. An equitable fee or other interest in property held in trust is, for the purposes of transmission by devise or descent from the *cestui que trust,* subject to the same rules as the legal estate, and vests in the

same manner. Lewin on Trusts, 557. *Banks* v. *Sutton*, 2 P. W. 713. The meaning of the words " children or their descendants," (if the alternative adds anything,) is " children, or in case of the decease of any such children then to their descendants." *Jones* v. *Torin*, 6 Sim. 255. Otherwise, trustees might, at their election, deprive the children and grandchildren of any share in the estate. But the testator has provided that his grandchildren shall be " as equally benefited as may be by said property." To make " other descendants " a class separate from the daughter and her children would, as a limitation of an estate, violate the rule against perpetuities. *Leake* v. *Robinson,* 2 Meriv. 363. Lewis on Perp. 487. 1 Jarman on Wills, 227.

The court will always strive to adopt a construction by which the objects of the testator's bounty will take a vested interest in the gift at all events ; and if a power of selection is given to the trustees, the whole class will take a vested interest, subject to be devested by the exercise of the power ; and if it is never exercised, the whole class will take equally. Hill on Trustees, (3d Amer. ed.) 69, 79, 492. 1 Roper on Leg. 629. *Burrough* v. *Philcox*, 5 Myl. & Cr. 72. This vesting, where the distribution is in the future, is not affected by the fact that the trust contemplates parties not *in esse ;* but the interest of such parties vests as they come into being. *Malim* v. *Keighley*, 2 Ves. Jr. 333, 529, and 3 Ves. 150.

At the testator's death, Mrs. Parsons and her children, all of whom were born before that event, took vested interests, subject to be devested by the exercise of the power, and also (since there is nothing in the will to prevent such construction) subject, as to her interest, to be devested by her death before any exercise of the power, if such power should subsequently be exercised in favor of the survivors. *Boyle* v. *Peterborough*, 1 Ves. Jr. 299. *Maddison* v. *Andrew*, 1 Ves. Sen. 57. *McGhie* v. *McGhie*, 2 Madd. 377. 2 Pow. Dev. (Jarm. ed.) 374, 375.

The better construction is that the estate, on the death of the testator, vested in his children and grandchildren, and that the words " other descendants " may be stricken from the case. *Longmore* v. *Broom*, 7 Ves. 124.

**3.** The sum of $5000, given in trust for each of Mrs. Parsons's children, was a vested legacy ; for the law favors the vesting of estates. 1 Jarman on Wills, 726. The proviso that if any child, " on attaining the age of twenty one, shall become dissipated," the legacy might be withheld from him, was a condition subsequent. 1 Roper on Leg. 662. But as John B. Parsons died before that age, he never came within the scope of it. Interest began to accrue on the legacy in a year from the testator's death, and therefore John's legacy was payable immediately upon his death to his administrator. *Green* v. *Pigot,* 1 Bro. C. C. 105. *Crickett* v. *Dolby,* 3 Ves. 13, and 1 Hov. Suppl. 244, note 6.

*J. H. Clifford & E. Ames,* for the executors and trustees. 1. There being no provision for setting apart a fund to pay legacies to afterborn grandchildren, if the provision for afterborn grandchildren is to have full and uncontrolled effect, the whole residue may be locked up until his surviving daughter is past childbearing, and until the death of his five sons, and his children may have children enough born to them after his death to consume in legacies and interest the whole residue. Such an intention is inconvenient and improbable, and not to be presumed, unless required by the whole will. *Storrs* v. *Benbow,* 2 Myl. & K. 48. *Defflis* v. *Goldschmidt,* 19 Ves. 566, and 1 Meriv. 417. *Leng* v. *Hodges,* Jac. 585. *Leigh* v. *Leigh,* 15 Ves. 103. *Blake* v. *Bunbury,* 1 Ves. Jr. 194, and 1 Hov. Suppl. 56. *Crowder* v. *Clowes,* 2 Ves. 449, and 2 Hov. Suppl. 200, note 2. *Andrews* v. *Partington,* 3 Bro. C. C. 401. *Sitwell* v. *Bernard,* 6 Ves. 535, and 1 Hov. Suppl. 483, note 3. *Hutcheon* v. *Mannington,* 1 Ves. Jr. 366, and 1 Hov. Suppl. 103, note 2.

The most important rule in construing a will is to look at the whole, and not to take any clause separately ; and in so doing, a clause which, alone, would have one meaning, either plainly or by force of decided cases, may be very differently construed upon allowing proper effect to other parts of the will. *Benn* v. *Dixon,* 10 Sim. 638. *Chapman* v. *Gilbert,* 4 De Gex, Macn. & Gor '. 366. *Stokes* v. *Salomons,* 9 Hare, 75. *Brett* v. *Horton,* 4

Beav. 242. *Jones* v. *Price*, 11 Sim. 568. *Cort* v. *Winder*, 1 Colly. 322, 323. *Cook* v. *Holmes*, 11 Mass. 533.

Upon the fifth clause of the will it is clear that the testator meant that the larger part of his property, under the words " rest, residue and remainder," should be enjoyed by his children in their lifetime. If the third and fifth clauses are utterly irreconcilable and contradictory, the earlier clause must yield, so far as necessary to give effect to the later, and so far only. *Morrall* v. *Sutton*, 1 Phil. Ch. 533. *Sherratt* v. *Bentley*, 2 Myl. & K. 149. *Doe* v. *Biggs*, 2 Taunt. 109. *Sims* v. *Doughty*, 5 Ves. 243, and 1 Hov. Suppl. 393, note 2. *Constantine* v. *Constantine*, 6 Ves. 100. *Galland* v. *Leonard*, 1 Swanst. 163. *Sweet* v. *Chase*, 2 Comst. 73. 1 Jarman on Wills, 412, 427. No part of the will is to be rejected, to which meaning can be given consistently with the general intention of the testator. *Gray* v. *Minnethorpe*, 3 Ves. 103, and 1 Hov. Suppl. 254, note 1. *Dover* v. *Gregory*, 10 Sim. 399. Parke, B., in *Morrall* v. *Sutton*, 1 Phil. Ch. 536, 537. *Jennings* v. *Newman*, 10 Sim. 223. *Galland* v. *Leonard*, 1 Swanst. 163. 2 Jarman on Wills, 743. *Covenhoven* v. *Shuler*, 2 Paige, 130. *Pond* v. *Bergh*, 10 Paige, 152.

Words may be supplied, in order to effectuate the intention. *Lawrence* v. *Lawrence*, 1 Edw. Ch. 250. *Rathbone* v. *Dyckman*, 3 Paige, 26. *Vauchamp* v. *Bell*, 6 Madd. 346. *Scott* v. *Scarborough*, 1 Beav. 168. *Chapman* v. *Gilbert*, 4 De Gex, Macn. & Gord. 366. *Stokes* v. *Salomons*, 9 Hare, 75. *Thellusson* v. *Woodford*, 4 Ves. 325. *Vaughan* v. *Headfort*, 10 Sim. 639. *Wood* v. *Cox*, 2 Myl. & Cr. 694. *Oddie* v. *Woodford*, 3 Myl. & Cr. 613. The words applying to grandchildren born after the testator's death should be construed as if he had added the words, " and before the residue is divided under the fifth clause;" and the legacy be given to those grandchildren born after the testator's death and before the end of one year from that time, when the legacies became payable, and excluding all others. *Sullivan* v. *Winthrop*, 1 Sumner, 12, 15. *Scott* v. *Scarborough*, 1 Beav. 168.

2. Since the death of Mrs. Parsons and her son John B. Par-

sons, the power given to the trustees by the will to convey one seventh to her or to her children, " or other descendants," still exists, and they can convey the whole of it to her three surviving children. The words " other descendants," in the events which have happened, may be stricken out as immaterial *Jones* v. *Torin*, 6 Sim. 255. If the power in the trustees had become extinguished during the lives of Mrs. Parsons and of all her four children, each would have taken one fifth of the one seventh of the residuary estate, as a vested interest. *Witts* v. *Boddington*, 3 Bro. C. C. 95, & Amer. note. *Birch* v. *Wade*, 3 Ves. & B. 198. In that case, Samuel B. Parsons would now have taken, as next of kin, two fifths of the one seventh. But it is quite plain that Mrs. Parsons's interest in the one seventh of the residue was contingent during her life, because the trustees, having by the will the power of selection, could legally convey the whole thereof to her children. Therefore nothing devolved upon the next of kin or heirs of Mrs. Parsons upon her death, and the power of selection is necessarily confined to her children. *Boyle* v. *Peterborough*, 1 Ves. Jr. 299, and 1 Hov. Suppl. 95, note 1. *McGhie* v. *McGhie*, 2 Madd. 378. *Butcher* v. *Butcher*, 1 Ves. & B. 79. *Green* v. *Pigot*, 1 Bro. C. C. 105. *Cloberry* v. *Lampen*, Freem. Ch. 24 & notes. *Anon.* Freem. Ch. 64.

The decision was made in June 1860.

SHAW, C. J. 1. The court are of opinion that the gift of $5000 for afterborn children indefinitely cannot be carried into effect, because inconsistent with the general intent of the will. It must therefore be limited to a period at which the residue becomes formed, and is, by the general intent of the will, to be distributed. The two intents; 1st. To keep the estate open indefinitely; and, 2d. That the testator's own children shall enjoy the residue in their lifetime; are incompatible, and one must yield. The intent that the children shall enjoy as soon as the residue shall be formed is the leading intent. This might be, and actually is, at the expiration of one year, when debts are supposed to be paid, and the executors are to settle the estate.

Another period for the formation of the residue might be fixed, either by express provision, or as necessarily resulting from other provisions of the will.　The intent of the testator is to be carried into effect as far as it can be done, and should be observed and respected as far as it can be, when it cannot be fully carried into effect.　Here it might be when the first after-born child was born, because then and upon that contingency a further sum of $5000 was to be paid, and then there must be a distribution.　It appears that no such settlement and distribution was then made.　But when the bill was brought, the bar to any further suit or claim was absolute, as the statute of limitations had taken effect, and no debt could then be proved.　To extend the formation of such residue to the time at which an afterborn grandchild could be born would be inconsistent with the principal intent of the testator.　It therefore must be limited.　The court are of opinion that the time of the filing of this bill is the proper time for considering the term closed which excludes afterborn grandchildren; and that the grandchildren born after that time, or to be born hereafter, must necessarily be excluded.

2. The next question arises upon the right of Parsons, the husband of one of the daughters, to the share of one of his children, who has died since the testator.　Until the death of his wife, the trustees might elect to pay over to her, or to her children.　After her decease that power of election ceased, and the duty became absolute to pay to the children as a class.　The power did not extend to the selecting of particular children of the class.　After the death of the mother, the equitable legacy became vested in the four children in aliquot parts.　The four children then took one quarter each.

But they took subject to this power of the trustees to withhold from either who should become intemperate or dissolute, of which the trustees were to judge.　This was a condition subsequent, upon the happening of which the vested gift would cease and become void.　One of the children died at four years old, before he could become intemperate, and the vested gift became absolute.　This equitable interest descended, and his

father, as the next of kin and heir at law and distributee of his infant son, took it by operation of law.

*Decree accordingly.*